UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| NICOLE JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:19-CV-95-PPS |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of the Social Security ) | |
| Administration ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Nicole Johnson appeals the denial of her application for Social Security disability benefits. An Administrative Law Judge found that Johnson was not disabled within the meaning of the Social Security Act and that she had the residual functional capacity to perform light work with some restrictions. Twice, the ALJ focused on one statement that Johnson's treating physician made in her initial visit with the doctor and ignored everything else the doctor said over next few years which suggested the contrary. This sort of cherry-picking of evidence is prohibited. Thus, because the ALJ failed to adequately consider the totality of the opinion of Johnson's treating physician, I will reverse this decision and remand this case for further proceedings.[1]

---

[1] The Court previously admonished Plaintiff's counsel for the way he requested additional time to file his brief. [DE 16.] I made the point that counsel had previously been admonished in other cases. I was incorrect. I confused Plaintiff's counsel with another lawyer having the same surname. I apologize to counsel for the error.

**Background**

At the time of the hearing, Nicole Johnson was 38 years old. [AR 36.][2] She has a GED and previously worked as an accountant, bank teller, assistant manager, leather apparel sales representative, and customer service representative. [AR 38-42, 59.] Johnson sought benefits claiming her disabilities of fibromyalgia, systemic lupus erythematosus, and anxiety began on January 15, 2015. [AR 10.] With respect to daily activities, Johnson claims that she is unable to perform routine chores due to the pain and swelling in her hands, unable to walk, sit, or stand for extended periods of time, and relies heavily on her mother and sister-in-law. [AR 42-57.] The ALJ issued a decision denying Johnson benefits, and she now seeks review of that decision.

The ALJ engaged in the required five-step sequential evaluation process to determine whether Johnson was disabled. At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). The ALJ determined that Johnson has not engaged in substantial gainful activity since January 15, 2015, the alleged onset date. 20 C.F.R. § 404.1571 *et seq*. At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairment that are "severe." 20 C.F.R. 404.1520(c). The ALJ determined that Johnson has the following severe impairments: fibromyalgia and systemic lupus erythematosus.

---

[2] The Administrative Record (AR) in this case is found at Docket Entry #13. Citations are to the page number in the lower right hand corner.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals one of the applicable Social Security listings. 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. 404.1520(d), 404.1525, and 404.1526. The ALJ found that Johnson's disability did not meet or medically meet the severity of a listed impairment. The ALJ then determined Johnson's residual functional capacity and found that she was able to perform light work with certain limitations: occasionally lifting and carrying twenty pounds and ten pounds frequently, occasionally reaching overhead, sitting for six hours and standing/walking for six hours a day with normal breaks, occasionally climbing stairs, occasionally kneel, stoop, crouch, and crawl, occasionally work in extreme temperatures. [AR 15.] The ALJ denied Johnson disability benefits and found her capable of working in her previous jobs as a customer service representative, bank teller, leather apparel salesperson, and accountant clerk. [AR 18.]

## Discussion

As a district court judge, I cannot determine whether Johnson is disabled – that's the ALJ's decision to make. My job is to review the ALJ's ruling to determine whether it applied the correct legal standards and whether the decision is supported by substantial evidence. *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004). While ALJ need not address every piece of evidence, he must build a "logical bridge" between the evidence and his findings and

adequately discuss the issues so that I "can assess the validity of the agency's findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). If the ALJ's factual determinations are not supported by substantial evidence, then the decision must be reversed. *Young,* 362 F.3d at 1001.

Johnson first claims that the ALJ erred in not assessing her subjective symptoms. In assessing a claimant's subjective symptoms, the ALJ considers a two-step analysis: whether there is a medically determinable impairment that could reasonably be expected to produce the symptoms alleged and then determine the intensity and persistence of the symptoms to determine the extent to which they limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(b), (c).

Along with objective medical evidence, the ALJ considers daily activities; location, duration, frequency, and intensity of pain and symptoms; precipitating and aggravating factors; the effects of medication; other treatment; additional measures used to relieve pain and symptoms; and other factors concerning functional limitations and restrictions due to pain or other symptoms. *Id*. The ALJ then weighs any inconsistencies or conflicts and diminishes the capacity for work activities to the extent of the alleged limitations and restrictions. 20 C.F.R. § 416.929(c)(4). The ALJ determined that Johnson has a medically determinable impairment but denied the intensity and persistence of her symptoms in the medical record.

Johnson states that she has numerous symptoms, including fever, fatigue, light sensitivity, pain and swelling in her hands, and daily nausea with infrequent vomiting.

-4-

The ALJ determined that Johnson's "medical records did not fully support her allegations" and that she did not appear to be in acute distress or is only mildly distressed. [AR 17]. In support, the ALJ referenced one statement made by her treating physician, Dr. Artur Kaluta, at her first office visit in April 2015. The ALJ noted that Dr. Kaluta remarked that he was "surprised that she was applying for disability without trying any meaningful treatment first." [A.R. 17, 382.] Johnson claims that this fleeting reference does not come close to telling the full story of her treatment history with Dr. Kaluta. She points to three full years of medical records from visits with Dr. Kaluta that support her subjective symptoms. Johnson also claims that the ALJ considered one statement by Johnson's rheumatologist, Dr. Jeremey Schue, on the first office visit, that she had a "questionable history of lupus" without considering any follow-up exams that suggested the contrary. In short, Johnson argues that the ALJ should have given greater credit to her treating physicians, whose multiple exams supported her subjective symptoms.

For its part, the SSA argues that the ALJ properly cited Dr. Kaluta's statement that he was surprised that Johnson was applying for disability without trying any meaningful treatment first. The SSA emphasizes that the consultative examiner in 2016 found that Johnson had normal finger abduction and opposition in both hands and excellent grip strength. At the most recent examination in 2018, an examiner found that

-5-

Johnson had no joint deformity, swelling, restricted motion, or pain. The SSA points to these examinations as proof that the ALJ's decision was supported by substantial evidence.

Johnson is correct that the ALJ made only a passing reference in his decision to Johnson's treating physician, Dr. Kaluta. He used Johnson's first office visit with Dr. Kaluta on April 14, 2015, to support his decision that her symptoms are suggestive of non-organic origins and that her treating physician was "surprised Johnson was applying for disability without trying any meaningful treatment." [AR 382.] However, that initial visit clearly shows Johnson was suffering from a number of symptoms, including malaise/fatigue, shortness of breath, chest pain, nausea, vomiting, diarrhea, muscle weakness, joint paint, joint swelling, and additional symptoms, all of which went unmentioned by the ALJ. [AR 380.] A week later, Johnson returned for a follow-up visit with Dr. Kaluta, where his licensed practical nurse noted similar symptoms: hand swelling, pain, nausea with lightheadedness, but no fever. [AR 365.] The record shows that Johnson followed up with Dr. Kaluta on May 12, 2015, June 25, 2015, March 28, 2016, April 27, 2016, May 9, 2016, June 20, 2016, September 19, 2016, October 19, 2016, November 30, 2016, March 1, 2017, and September 5, 2017, each time describing multiple severe symptoms. [AR 412-13, 371-79, 525-26, 667-68, 685.] Yet none of this was mentioned by the ALJ.

In addition to Dr. Kaluta, the ALJ also cherry-picked a statement from Johnson's treating rheumatologist, Dr. Jeffrey Schue, without considering the rest of the medical

record. Dr. Schue's notes indicate that Johnson's first visit was a referral by Dr. Kaluta, who diagnosed her with fibromyalgia and was considering testing her for lupus. A couple of times in his opinion, the ALJ referenced Dr. Schue's note from his first visit with Johnson, stating that she "has a questionable history of lupus." [AR 16.] Yet on the very same page as this initial visit is the follow up visit about two months later, where Dr. Schue assessed Johnson with "systemic lupus erythematosus, unspecified . . . Patient seems to have lupus (though some RA overlap possible too)." [AR 593.] Finally, the ALJ doesn't even mention the records by Johnson's other physicians: Drs. Jordan Dutter and Ryan Fay, whom she saw multiple times. [AR 179-80, 620, 626, 628, 630, 667-68, 674, 684, 679, 696, 700, 702.]

The ALJ relied heavily on the opinion of the SSA's consultative doctor, Dr. Amanda Stram. [A.R. 17.] It is true that an ALJ can choose to favor the opinion of a medical consultant over a treating doctor. But that can only be done if the ALJ first fully evaluates the medical records of the treating doctor and gives good reasons for discounting it. C.F.R. §§ 404.1527(c), (d)(2); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). While the ALJ need not evaluate each piece of evidence, he must build a logical bridge to support his decision. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

In sum, the ALJ cherry-picked evidence that supported his opinion while ignoring substantial evidence to the contrary. *Denton v. Astrue,* 596 F.3d 419 (7th Cir. 2010). In so doing, the ALJ failed to build a logical bridge between the evidence and his conclusion. It may well be that after evaluating the totality of the treating doctor's

record, the ALJ will conclude that there are still jobs available in the national economy that she can perform. But for now, on this record, I cannot find that the ALJ's opinion is supported by substantial evidence.

## Conclusion

For the foregoing reasons, the final decision of the Commissioner of Social Security is REVERSED and the matter is REMANDED to the Social Security Administration for further proceedings consistent with this opinion.

SO ORDERED on November 30, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT